ARTHUR D. NELSON v. G. F. LOHMAN,
DECEASED, AND OTHERS.

234 N. W. 2d 820.

October 10, 1975—No. 45177.

*Conrad J. Carr,* for appellant.
*Paul W. Lohmann* and *Lewis E. Lohmann,* for respondents.

PER CURIAM.

This is an action for money had and received in which plaintiff seeks to recover rent paid by third persons to defendant, G. F. Lohman, who owned the land on which plaintiff's building was located. At the conclusion of plaintiff's case, the court directed a verdict in favor of defendant on the grounds that plaintiff failed to prove that any rentals were received; that plaintiff abandoned his building; and that he was guilty of laches. We reverse and remand for a trial on the merits.

Construing the evidence in a light most favorable to plaintiff, it appears that in 1963 he purchased a building with dimensions of 24 feet by 22 feet, containing two offices and a display room, and attached to real estate owned by G. F. Lohman. Until April 1966, plaintiff paid Lohman $100 a month rent but thereafter became delinquent, and by January 1967 was $700 in arrears.

In January 1967, plaintiff delivered the key to the building to Lohman and thereafter did not physically occupy the building again. On January 13, 1967, Lohman wrote plaintiff the following letter:

"January 13, 1967

"Mr. Arthur D. Nelson
4804 Upton Avenue South
Minneapolis, Minnesota 55410

"Dear Mr. Nelson:

"Thank you for the key to your building located at Monk and No. 7. I had it inspected today and was disappointed by the report given me by two of my associates, both of whom are competent and experienced Realtors.

"They were agreed that the building is well constructed and would cost perhaps as much as $3,000.00 equipped and furnished, as is, if it were to be replaced. They point out, however, that it is limited as to use, has no plumbing, would require extensive remodeling for any use other than a garage. Not having a wood floor adds substantially to the moving cost. It would not be feasible to move the cement floor which would mean added cost for a new floor.

"These men have no interest in my property so would have no ulterior motive in downgrading the value. They did not include the furni-

ture or television in their appraisal and neither felt the building, including the heater and air conditioner, was worth more than the $700.00 which you owed me up to November 1st. As a garage it could be worth about $2,000.00 after being moved.

"I therefore propose that you execute a chattel mortgage on the building, not including the furniture, in the amount of $700.00, to run one year and to carry 5% interest. I would allow the building to remain on the premises free of charge until I require or sell the land. Said mortgage to run one year but to become due and payable in case you sell the building or wish to remove it from the premises.

"In the meantime, I will strive to rent the building, subject to removal in thirty days in case of sale or lease to party requiring the entire area, in which case if the owner or lessee did not wish to acquire your building or arrange to rent it, you would be given thirty days in which to remove it, provided you give me acceptable protection as to my mortgage, should you wish to move the building.

"Should a lessee wish to use your building, you and I would have to work out a proportioning of the rent to the reduction of the chattel mortgage.

"We will be on the alert for a possible purchaser of your building and will submit any offer received.

"I sincerely hope you can find some means of paying off this obligation and that, in the meantime, you will execute the suggested chattel mortgage on the building.

"Please contact me at your early convenience."

"Yours very truly,

/s/ G. F. Lohman

G. F. Lohman"

"GFL:js

Plaintiff did not respond to the letter. He testified that he drove past the building from time to time and noticed that from the summer of 1967 on, it was occupied. Plaintiff made some attempt to reach Mr. Lohman but was unable to find him in the city. Because he reasoned that the building would have to be rented for a sufficient period to satisfy the $700 he owed Lohman, plaintiff waited 18 months before trying to communicate with him. Finally, in the fall of 1968, plaintiff retained an attorney who discussed the matter with Lohman's brother, Mr. Lewis Lohmann, a Minneapolis attorney. In December 1971, Lewis Lohmann wrote plaintiff's attorney offering to pay plaintiff $200 for a full release of plaintiff's claim to the property. The offer was not accepted, and in July 1972 this action was started by plaintiff. Mr. G. F. Lohman

died on August 23, 1973, and his executors were substituted as defendants.

The original complaint alleged an agreement whereby Lohman undertook to rent out the property for the benefit of plaintiff. The prayer for relief was for an accounting. By amendment, plaintiff added a second count seeking $10,000 for money had and received by Lohman from tenants who occupied plaintiff's building.

We deem it unnecessary to recite the evidence in detail. Suffice it to say, plaintiff introduced evidence from which a jury could find that plaintiff's building was occupied from and after the summer of 1967 and that Lohman was paid rentals in various amounts by third persons for the use of the premises. Defendants vigorously asserted to the trial court, without introducing evidence, that the occupants of plaintiff's building may well have been trespassers, and that the rent which Lohman's books showed was paid, may have been for the use of the land only. These, however, were matters which should properly have been resolved by the jury.

The court assigned three reasons for directing the verdict, first, that no jury question was raised. The evidence was undisputed, however, that the building was actually occupied from time to time and that Lohman received rent for the property where the building was located. It was a question of fact whether the circumstantial evidence indicated that the rent was for both the land and the building or for the land alone.

Second, that plaintiff abandoned the building. Again it was a fact question as to plaintiff's intent, and the evidence does not compel a finding as a matter of law that he abandoned the building.

Third, that plaintiff was guilty of laches. We are of the opinion that on the record before us defendants have failed to show the kind of prejudice attributable to plaintiff which would bar his right to recover on that ground. Both parties were dilatory in the extreme in negotiating an agreement with one another. Nevertheless, plaintiff had a right to rely on Lohman's letter of January 13, 1967, as a recognition of plaintiff's interest in the building located on Lohman's land. It is undisputed that Lohman was seriously ill and that plaintiff's lawyer had difficulty reaching him. However, the fact remains that a jury could find that plaintiff had a valid legal title to the building here in question which could not be divested without some affirmative action by Lohman or proof by defendants that plaintiff had in fact abandoned the property. There was no such proof, however, on the record before us. Under the circumstances, we hold that the mere inaction on the part of plaintiff until he started his lawsuit did not mislead Lohman to his prejudice.

568

We are not persuaded by defendant's arguments that plaintiff's failure to inspect the property, to repair and maintain it, to pay rental for its use, or to be more diligent and aggressive in communicating with Lohman permitted a finding of prejudice to Lohman and these defendants as a matter of law. It was as much Lohman's duty to reach an accommodation with plaintiff concerning the use or removal of plaintiff's building as it was plaintiff's duty to work out a mutually satisfactory arrangement with Lohman.

The matter is accordingly reversed and remanded with directions to advance the case for immediate trial.

Reversed and remanded.